IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MARK ANTHONY CAPLINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:14-cv-00020 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN W. COLVIN, ) | Magistrate Judge Brown |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Mark Anthony Caplinger's Motion for Judgment on the Administrative Record ("Motion"). (Doc. No. 8.) On November 25, 2014, Magistrate Judge Brown issued a Report and Recommendation ("Report") recommending that Caplinger's Motion be denied and the decision of the Social Security Administration be affirmed. (Doc. No. 13 at 25–26.) On December 10, 2014, Caplinger filed Objections to the Report (Doc. No. 14), to which the Commissioner filed a Response (Doc. No. 15). For the reasons stated below, the Court **ADOPTS in part** the Magistrate Judge's Report, **GRANTS in part** Caplinger's Motion, **VACATES** the Administrative Decision, and **REMANDS** this case to the Commissioner for further proceedings. The Clerk of the Court is **DIRECTED** to close the case.

### I. STANDARD OF REVIEW[1]

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of*

---

[1] The Court adopts the Magistrate Judge's description of the facts and procedural posture of this case. (Doc. No. 13 at 1–15.) The Court describes the facts only as necessary to facilitate analysis of the parties' arguments below.

1

*Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the Administrative Law Judge's ("ALJ") decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## II. CAPLINGER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Caplinger objects to the Magistrate Judge's recommendations that (1) the ALJ followed the good reasons requirement in declining to accord Dr. Wall's medical opinion controlling

2

weight; (2) the ALJ did not ignore evidence relating to Caplinger's left knee in assessing his Residual Functional Capacity; and (3) the ALJ properly considered Caplinger's failure to undergo surgery or submit to a functional capacity evaluation as part of his adverse credibility determination. (Doc. No. 14 at 1.) The Court addresses each objection in turn.

### A. Treating Physician Opinions

Dr. Wall is a treating source,[2] thus the ALJ must accord Dr. Wall's opinion "controlling weight" if the following conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013) (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). At the first prong, medically acceptable techniques are those "in accordance with the medical standards that are generally accepted within the medical community as the appropriate techniques to establish the existence and severity of an impairment." Soc. Sec. Admin., Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions, SSR 96-2P, 1996 WL 374188, at *3 (July 2, 1996) [hereinafter SSR 96-2P]. The existence and severity of musculoskeletal impairments is determined through "detailed descriptions of the joints, including ranges of motion, condition of the musculature (e.g., weakness, atrophy), sensory or reflex changes, circulatory deficits, and laboratory findings, including findings on x-ray or other appropriate medically acceptable imaging." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(C)(1). "Whether a medical opinion is well-

---

[2] Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." The record indicates Dr. Wall treated Caplinger "at least monthly from January 30, 2009 through December 18, 2012" for back pain, osteoarthritis pain, knee pain, gout, and leg and foot pain. (Doc. No. 13 at 2.) Dr. Wall had an ongoing treatment relationship with Caplinger and is a treating source under the regulation.

3

supported will depend on the facts of each case. It is a judgment that adjudicators must make based on the extent to which the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and requires an understanding of the clinical signs and laboratory findings in the case record." SSR 96-2P at *2.

The ALJ determined, and the Magistrate Judge agreed, that Dr. Wall's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques because the "records show he supplied random opinions regarding the claimant's ability to perform work activity, his opinions were, if anything, generalizations noting the claimant was 'unable to work,' unable to sit or stand, and able to lift 20 pounds." (Tr. 21.)[3] Upon review of the record, the Court agrees because, aside from occasional findings that Caplinger experienced muscle spasms (Tr. 373, 376, 448, 449, 469, 470, 490), the records do not contain any evidence of range of motion testing, detailed descriptions of Caplinger's joints, medically acceptable imaging, or any other objective findings. Although Caplinger correctly points out that Dr. Wall's records "reveal his findings and diagnoses" (Doc. No. 14 at 5), a medical opinion is not entitled to controlling weight unless it is well-supported by medically acceptable clinical and laboratory diagnostic techniques. Because Dr. Wall's opinion was not so supported, the ALJ did not err in failing to accord Dr. Wall's opinion controlling weight.

Where a treating source's opinion is not entitled to controlling weight, the degree of deference owed is determined according to the "length, frequency, nature, and extent of the treatment relationship . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (internal citations omitted). If the ALJ discounts a treating

---

[3] The Administrative Record is available electronically at Docket Number 5.

source's opinion, he must give "good reasons" for the weight accorded the opinion that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Id.* (internal citations omitted). A failure to give good reasons "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and, unless it is harmless error, is grounds for remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). Such an error might be harmless if:

> (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."

*Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The ALJ accorded "significant weight" to Dr. Wall's findings that "the claimant can lift up to 20 pounds and must elevate his right leg and foot to alleviate his pain." (Tr. 21.) The ALJ gave the following reasons: (1) the opinion as a whole was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, (2) Dr. Wall's treatment records were inconsistent with his opinion, (3) the opinion was inconsistent with the record as a whole, and (4) Dr. Wall's finding that Caplinger must elevate his foot is consistent with Caplinger's hearing testimony that "he spent the majority of his day sitting in his recliner." (*Id.*) As described above, the first reason is supported by substantial evidence. Furthermore, Caplinger testified that he sits in his recliner to relieve leg pain. However, upon review of the record, the Court finds the ALJ's remaining reasons are not supported by the evidence in the record, and the combined reasoning is not sufficient to permit meaningful review of the ALJ's application of the rule.

5

First, the Court disagrees with the ALJ's assessment that Dr. Wall's records were inconsistent with his opinion because they showed Caplinger "was generally in no apparent distress; well appearing; had an intact gait; and had no clubbing, edema, or deformities." (Tr. 21.) To the contrary, to the extent that they are legible, Dr. Wall's records indicate he often checked "no" in response to "Alert, well-appearing, NAD, hydrated and active," and checked "no" at almost every visit in response to "No cyanosis, clubbing, edema or deformities, Pulses full and =" and "Alert, oriented, CN II-XII grossly intact, SME intact, DTR's 2+ and symmetrical. No focal findings, N-N, H-S, Gait intact." (Tr. 339, 340, 342, 343–45, 347, 349–53, 356–76, 379, 449–50, 452, 469–71, 490, 492–94.) By checking "no" to an absence of findings, Dr. Wall indicated Caplinger had at least one symptom in each of those categories. The Court also notes the ALJ credited Dr. Wall's finding that Caplinger "can lift up to 20 pounds" (Tr. 21), but this fact is not in the record: Dr. Wall's treatment notes indicate Caplinger could *not* lift twenty pounds (Tr. 220, 377), and Dr. Wall's later opinion states Caplinger could only lift ten pounds (Tr. 479). The ALJ did not explain the source in the record of this finding or why he credited it.

Nor is the ALJ's determination that Dr. Wall's opinion is "not consistent with the record" supported by substantial evidence. (Tr. 21.) Residual functional capacity ("RFC") "is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule. It is not the least an individual can do, but the most, based on all of the information in the case record." Soc. Sec. Admin., Titles II & XVI: Determining Capability to Do Other Work—Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P, 1996 WL 374185, at *2 (July 2, 1996). The ALJ's RFC assessment limited Caplinger to sedentary

6

work, "except the claimant needs to elevate his leg approximately one foot high using a foot stool." (Tr. 18.) Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). "The concept of sedentary work contemplates substantial sitting as well as some standing and walking. Alternating between sitting and standing, however, may not be within the definition of sedentary work." *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988) (quoting *Wages v. Sec'y of Health & Human Servs.*, 755 F.2d 495, 498 (6th Cir. 1985)). Dr. Wall's opinion limited Caplinger to carrying and lifting a maximum of ten pounds, standing and walking less than two hours a day, and sitting for up to four hours a day for a maximum of forty-five minutes at a time, and noted "[b]ecause of his chronic pain, he constantly changes positions." (Tr. 479–82.) If Dr. Wall's opinion were adopted, Caplinger would be incapable even of sedentary work because he could not sit eight hours a day and would constantly change positions.

The record also contains opinions by treating physicians Drs. Donald Arms and Jeffrey Hazlewood, consulting examiner Dr. Donita Keown, and non-examining physicians Drs. Charles Settle and Nathaniel Robinson. The opinions of treating physicians Arms and Hazlewood are largely consistent with Dr. Wall's opinion and, if adopted, would require a more restrictive RFC assessment than the ALJ's. Dr. Hazlewood's January 2011 restrictions—"no lifting over 10 pounds; sit down work 70% of every one hour, change positions frequently; use ice as needed; may not work more than 8 hrs. per day/40 hrs. per week"—could also limit Caplinger to less

7

than sedentary work because he would be required to change positions frequently, and the ALJ did not account for this restriction. (Tr. 488; *see* Tr. 484–87.) *See Preston*, 854 F.2d at 819. Moreover, Dr. Arms' restrictions of March 29, 2011, limited Caplinger to "Desk duty. No kneeling/squatting/prolonged standing. Please allow foot elevation. Initially please limit work to 4° shifts for next 4 weeks." (Doc. No. 14 at 6 (quoting Tr. 489).) Because Dr. Arms limited Caplinger to four hour shifts, Dr. Arms' opinion would also preclude sedentary work.

Even though Dr. Arms and Dr. Hazlewood are treating sources,[4] the ALJ did not apply the controlling weight analysis to their opinions. In fact, although the ALJ discussed some of their treatment records in his Decision, he did not mention either medical opinion. Instead, the ALJ's summary of Caplinger's medical records draws primarily from treatment notes issued before Caplinger's March 2010 injury. For instance, the ALJ notes Caplinger "was placed on temporary work restrictions during his treatment history; however, the claimant generally continued to perform his usual work and incurred additional injuries." (Tr. 19.) However, the ALJ did not mention that one of those additional injuries, sustained in March 2010, was the injury that Caplinger contends made him unable to work. (Tr. 33–34.) The ALJ later noted Dr. Hazlewood imposed restrictions but he "is working his same job at Walmart under his restrictions." (Tr. 19.) However, the ALJ did not mention that Caplinger attempted to work after this injury but was eventually terminated around this time because his employer had no work that met his restrictions. (Tr. 34.) The ALJ considered the fact that "Dr. Hazlewood calculated MMI for the lumbar back at '2% whole person impairment rating' due to subjective pain with no objective findings based upon consistent complaints of spasms . . . [and] the claimant could

---

[4] Dr. Arms treated Caplinger regularly from July 2008 through February 2012 (Tr. 280–337, 380–85, 465–67), Dr. Hazlewood treated Caplinger from June 2008 through March 2011 (Tr. 390–416, 484–88), and both are physicians, thus both doctors are treating sources.

continue his regular job without restrictions and without chronic medications." (Tr. 20.) However, the ALJ did not explain that the quoted treatment record was issued in October 2009, months before Caplinger's March 2010 injury. (Tr. 402–03.)

Failure to following the treating source rule is grounds for reversal unless the error is harmless, even if "a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546; *accord Friend*, 375 F. App'x at 551. In this case, the Arms and Hazlewood opinions are no so deficient that they could not possibly be credited, the ALJ did not adopt opinions consistent with the treating source opinions, and because the ALJ did not mention their opinions or their most recent treatment records in his Decision, the ALJ did not provide sufficient reasoning for this Court or the claimant to understand why the Arms and Hazlewood opinions were not adopted. Accordingly, the ALJ's failure to follow the treating source rule as to Drs. Arms and Hazlewood is, in itself, grounds for remand.

Furthermore, the ALJ's determination that Dr. Wall's opinion was inconsistent with the record is not supported by substantial evidence because, as explained above, Dr. Wall's opinion was largely consistent with the opinions issued by Drs. Arms and Hazlewood. Although the record contains contrary opinions issued by a consulting and two non-examining sources, the ALJ determined these opinions were not entitled to significant weight because they were overly optimistic and did not account for all of the relevant medical evidence. (Tr. 20–21.) Even if the opinions were entitled to greater weight, however, the opinions of consulting and non-examining physicians are "entitled to little weight if [they are] contrary to the opinion of the claimant's treating physician," *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987), and contrary consulting or non-examining source opinions are not substantial evidence to justify disregarding treating source opinions, *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009).

9

The Court finds the ALJ's failure to give good reasons supported by the record for rejecting Dr. Wall's opinion was not harmless error. His opinion, based on years of regular treatment and consistent with other opinions in the record, is not so patently deficient that it could not possibly be credited. The ALJ did not make findings consistent with Dr. Wall's opinion. Finally, the ALJ did not meet the goal of the good reasons requirement because, as explained above, the ALJ did not provide a sufficient explanation to permit this Court or Caplinger to understand the ALJ's reasoning. Accordingly, the Magistrate Judge's Recommendation on this point is **REJECTED** and Caplinger's Motion **GRANTED**.

### B. Left Knee Pain

Caplinger contends the ALJ's RFC assessment was not supported by substantial evidence because it did not account for Caplinger's need to elevate his left knee. The Magistrate Judge determined there "is no objective medical evidence in the record that establishes plaintiff's alleged left knee pain. Plaintiff's alleged left knee pain is based solely on his subjective complaints. Moreover, there is no medical evidence in the record, objective or otherwise, that plaintiff has to elevate both his left leg and his right leg." (Doc. No. 13 at 18.) Upon review of the record and Caplinger's Objection, the Court agrees with the Magistrate Judge's assessment. Accordingly, the Magistrate Judge's Recommendation on this point is **ADOPTED** and Caplinger's Motion **DENIED**.

### C. Credibility

Finally, Caplinger objects to the Magistrate Judge's determination that the ALJ properly considered Caplinger's failure to undergo surgery or submit to a functional capacity evaluation ("FCE") as part of the adverse credibility determination. In assessing a claimant's subjective complaints, the ALJ follows a two-step analysis:

10

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (internal citations omitted). Here, the ALJ determined Caplinger's underlying medically determinable physical impairments could reasonably be expected to produce his symptoms. (Tr. 19.) Therefore, the ALJ was required to evaluate the effects of Caplinger's symptoms by considering the following:

> the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a)). In evaluating the effects of the claimant's symptoms, the ALJ considers the claimant's credibility. Soc. Sec. Admin., Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, Soc. Sec. Ruling 96-7P, 1996 WL 374186, at *3 (1996) [hereinafter SSR 96-7P]. "Credibility determinations regarding the applicant's subjective complaints of pain rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013); *Rogers*, 486 F.3d at 249.

The claimant's medical treatment history is a proper consideration as part of the credibility assessment, and "the individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7P at *7. However, the ALJ may not draw adverse inferences about a claimant's condition from his failure to follow a treatment recommendation

11

"without first considering any explanations that the individual may provide, or other information in the case record" that may explain the failure. *Id.*; *accord Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014); *Johnson*, 535 F. App'x at 507 (holding ALJ's failure to ask claimant to explain why he refused surgery was harmless error because adverse credibility determination was otherwise supported by substantial evidence).

Upon review of the record, the Court agrees with the Magistrate Judge that the ALJ properly considered Caplinger's refusal to have back or knee surgery in making the credibility determination because the ALJ asked Caplinger why he did not have surgery and considered the evidence in the record on this point. The ALJ explained "[w]ith regard to the right knee, the record shows the claimant decided against operative treatment, as continually requested by his physicians." (Tr. 19.) In the hearing, Caplinger's attorney asked about the recommended surgeries, and Caplinger explained he did not want knee surgery, and that his doctor told him he should not get a knee replacement surgery at his age if he could ambulate. (Tr. 38.) The record, however, indicates Dr. Arms repeatedly recommended knee surgery to Caplinger and explained Caplinger would not experience further medical improvement without surgery, but that Caplinger declined because he did not want the surgery, felt the risks outweighed the benefits, and believed his knee pain was not serious enough to justify surgical intervention. (Tr. 295, 301–02, 304, 306, 308, 313, 314, 316, 320, 323, 326, 329, 332.) As to his back pain, the record shows Caplinger sought a referral to a neurosurgeon in 2011 (Tr. 337), but when asked about back surgery at the hearing, Caplinger stated he did not want the surgery (Tr. 38).

Caplinger also contests the ALJ's decision to discount his credibility in part because he refused to undergo "functional capacity evaluations to determine his ability to perform work-related activities." (Tr. 21.) The record indicates Dr. Arms believed Caplinger had reached

maximum medical improvement as to his knee, provided Caplinger would not undergo knee surgery, and recommended he schedule a functional capacity evaluation ("FCE") to determine his level of permanent impairment for workers' compensation purposes, but Caplinger refused. (*See, e.g.*, Tr. 384, 337, 332.) Caplinger did not provide a legal argument as to why this consideration was erroneous in his briefings before the Magistrate Judge (*see* Doc. No. 13 at 23–24) or this Court (Doc. No. 14 at 7). As explained above, the ALJ may consider most relevant evidence in assessing the claimant's credibility, and Caplinger has not explained why this consideration was improper.

Caplinger does not challenge the ALJ's credibility determination as a whole, only the consideration of his refusal to submit to surgery or a FCE. Accordingly, the Magistrate Judge's Report on this point is **ADOPTED** and Caplinger's Motion **DENIED**.

### III. CONCLUSION

For the reasons stated above, the Court **ADOPTS in part** the Magistrate Judge's Report (Doc. No. 13), **GRANTS in part** Plaintiff's Motion (Doc. No. 8), **VACATES** the administrative decision, and **REMANDS** this case to the Commissioner for further proceedings. The Clerk of the Court is **DIRECTED** to close this case.

It is so ORDERED.

Entered this the  2nd  day of September, 2015.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT